AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
## for the
## Western District of New York



| | |
|---|---|
| United States of America<br><br>v.<br><br>Edgar Pavia and<br>Adrian Goudelock<br><br>*Defendants* | Case No. 18-mj-5191 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between in or about October 2017 and continuing to in or about September 2018, in the Western District of New York and elsewhere, the defendants Edgar Pavia and Adrian Goudelock, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to commit the following offenses, that is: to possess with the intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), all in violation of Title 21, United States Code, Section 846.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*
JACK G. WAUGAMAN, III
Special Agent
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 7, 2018

*Judge's signature*

City and State: Buffalo, New York

HON. MICHAEL J. ROEMER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

STATE OF NEW YORK )
COUNTY OF ERIE    )   SS:
CITY OF BUFFALO   )

## I.     INTRODUCTION

**Jack G. Waugaman III**, Special Agent of Homeland Security Investigations, United States Department of Homeland Security having been duly sworn, states as follows:

1. I am a Special Agent (SA) with the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), Buffalo, New York. I have been employed by HSI and the legacy organization since February 1996. I am currently assigned to the HSI Buffalo Border Enforcement and Security Task Force (BEST), an HSI sponsored law enforcement task force comprised of local, state, federal, and Canadian law enforcement officers co-located in Buffalo, New York and tasked with combatting transnational criminal organizations (TCOs) exploiting vulnerabilities of the shared international border. As such I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. Furthermore, per the Interagency Cooperation Agreement between the Drug Enforcement Administration ("DEA") and ICE/HSI, I am a cross designated agent authorized to investigate violations of Title 21, United States Code.

2. I have supervised, led, conducted, and assisted with complex criminal, multi-jurisdictional investigations targeting the importation, exportation, smuggling, transporting,

trafficking, and distribution of controlled substances (conducted by TCOs). I am familiar with the ways in which drug dealers conduct their drug-related business, including, but not limited to their methods of distributing narcotics; (b) methods of distributing drug proceeds; (c) use of telephone communication devices and digital display paging devices; (d) use of numerical codes and code words to identify themselves, the nature of the communication and to conduct their drug-related transactions; and (e) common practice of registering for and obtaining these communication devices under false names, or names of relatives and/or friends to avoid financial responsibilities and tracking of criminal activities by law enforcement entities.

3. I have participated in investigations which have employed the interception of wire, oral, and electronic communications authorized by the Federal courts in the Western District of New York. While participating in these investigations, I have reviewed and analyzed recorded conversations and records of drug traffickers and money launderers. Through training and experience I have learned and become very familiar with the coded language used by drug trafficking organizations to conceal illegal activities from law enforcement. I am familiar with many of the methods and techniques used by narcotics traffickers to launder and legitimize drug proceeds in an effort to avoid law enforcement detection and other government mandated reporting requirements.

4. This affidavit is based upon my own knowledge, my review of official records of the Department of Homeland Security, and upon information that I obtained from other law enforcement officers involved with this investigation. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included every

2

fact known to me concerning this investigation. I have set forth only facts that I believe are necessary to establish probable cause to demonstrate that **EDGAR PAVIA and ADRIAN GOUDELOCK** have violated Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute, and to distribute, 5 kilograms or more of cocaine).

## II.   PROBABLE CAUSE

5. This investigation is predicated upon the October 2017 seizure of approximately ten (10) kilograms of cocaine and $259,960 in U.S. currency. On October 19, 2017, Special Agents of Homeland Security Investigations conducted a controlled delivery of 10 sham cocaine bricks in Pembroke, NY, resulting in the federal arrest of a co-conspirator.

6. Historical telephone toll records and historical cell-site data demonstrated cellular telephones utilized by **PAVIA** and **GOUDELOCK** were in contact with each other and overlapped location on October 3, 2017, in or around Cleveland, OH. Flight records from American Airlines revealed that on October 2, 2017, **PAVIA** travelled on American Airlines from El Paso (ELP) to Cleveland (CLE), transiting through Dallas Fort Worth (DFW). Historical cell-site data and toll records revealed that **ADRIAN GOUDELOCK** travelled from the Buffalo, NY area to the Cleveland, OH area on October 3, 2017. **PAVIA** utilized two different phones to communicate with **GOUDELOCK**, who was also utilizing multiple phones during this time period.

7. On July 18, 2018, the Honorable William M. Skretny, Senior United States District Court Judge, Western District of New York, authorized the interception of wire and

3

electronic communications occurring over 915-861-1809, a phone number utilized by **PAVIA** to coordinate bulk cocaine brokering activities from Texas to **GOUDELOCK** in Buffalo, NY. Intercepted calls and messages between **PAVIA** and **GOUDELOCK**, using 716-536-2108 revealed that a bulk shipment of cocaine was to be imminently delivered to **GOUDELOCK** in the Buffalo area. **GOUDELOCK** was also expected to provide bulk drug proceeds.

8. On July 18, 2018, a conversation between **PAVIA** and **GOUDELOCK** was intercepted discussing, in sum and in substance, the prices of cocaine, and the fact that cocaine prices were rising nationwide. Specifically, **PAVIA** told **GOUDELOCK** he was sending **GOUDELOCK** ten kilograms of cocaine. **PAVIA** explained that his supplier "sent you ten and he sent ten over there and ten over here, he tried to split it with everybody, you know what I mean?" Your affiant understands this conversation to mean that, due to shortages in cocaine, the supplier divided up the current shipment to split the remaining cocaine as many ways as possible.

9. Shortly after that call, another call was intercepted from **PAVIA** to **GOUDELOCK**. **PAVIA** told **GOUDELOCK** "I forgot to tell you cuz, these ten [10] you're taking, these ten [10] you're getting, they are the same price, alright?". Within a minute, **PAVIA** sent text messages to **GOUDELOCK** clarifying "Primo the 10 you getting is the same" and "29." Based on my training, experience, and participation in this investigation, I believe **PAVIA** was informing **GOUDELOCK** that the price for the ten kilograms **GOUDELOCK** was getting was the same price per kilogram, $29,000, as the prior delivery of cocaine to **GOUDELOCK**.

4

10. On July 25, 2018, at approximately 2:12 p.m., **PAVIA** called **GOUDELOCK**. The following transcription is a portion of the intercepted conversation:

| | |
|---|---|
| **PAVIA:** | Uh, okay, it's fifty-two, out of those fifty-two you gonna make uh—minus ten . . . |
| **GOUDELOCK:** | One in a . . . I'm turnin' one into fifteen. |
| **PAVIA:** | Yeah, it's still going to be fifty-one so it's going to be . . . it's still gonna be fifty-two package with uh, with his. |
| **GOUDELOCK:** | Right. You just want me to write his name on his? |
| **PAVIA** | Yea, just write his name on it. Just uh . . . make uh, tape it, give it to him, just put Eric on it and that's about it. He should be giving you seventeen 'cause they were going seven to other person but I guess . . . I don't know what happened do I don't—they decided to give it to us. |

Your affiant believes that this conversation was about packaging $15,000 for the driver of the tractor-trailer transporting the bulk quantity cocaine. **PAVIA** indicated to **GOUDELOCK** that there would be 51 bundles, plus a bundle labelled "Eric." Moreover, he informed **GOUDELOCK** that he would be getting 17 kilograms of cocaine rather than the originally anticipated 10 kilograms.

11. That same day, law enforcement seized approximately 17 kilograms of cocaine during the execution of a search warrant. In addition to the cocaine, law enforcement also seized a blue Alcatel cellular "flip" telephone bearing IMEI number 014892003291410. On August 10, 2018, the Honorable H. Kenneth Schroeder issued a search and seizure warrant (18-MJ-124) for the blue Alcatel cellular telephone bearing IMEI number 014892003291410. On August 24, 2018, HSI agents conducted a manual search of the cellular "flip" telephone. HSI Agents observed no saved contacts in the cellular "flip" telephone. HSI Agents reviewed

5

text messages contained on the cellular telephone and observed an incoming text message to the cellular "flip" telephone on July 25, 2018 at 4:05 p.m. from 716-602-8798, "99-101 slade ave. parked near bank  big rig". Your affiant knows 716-602-8798 to be a phone used by **GOUDELOCK**.

12. Law enforcement also searched a tractor trailer located at the approximate location listed in the above described text message. Law enforcement recovered 52 shrink-wrapped and taped bundles of currency, predominantly in $10,000 bundles, marked "P1 to P51" and "ERIC." The bundle marked "ERIC" was found to contain $15,000. In total, $519,580 in U.S. currency were seized from a bag. Law enforcement also located a hidden compartment in the rear wall of the sleeper area of the tractor cab. Three plastic wrapped packages of bulk US currency were recovered, totaling over $145,000.

13. On July 25, 2018, at 7:11 p.m. **PAVIA** received an incoming call from **GOUDELOCK** using 716-472-4663. The following transcription is a portion of the intercepted conversation:

| | |
|---|---|
| **PAVIA** | Hey, what's up cuz? You all right? |
| **GOUDELOCK** | Yeah, they got him man. |
| **PAVIA** | Who, who? Was it uh, Fat Boy? |
| **GOUDELOCK** | No, my other one, other cuz. [voices overlap] |
| **PAVIA** | Oh, okay. They took him in? |
| **GOUDELOCK** | Yeah. |
| **PAVIA** | Fuck! |

6

| | |
|---|---|
| GOUDELOCK | He ain't callin' or nothing. I was on the phone with him the whole time. Just to make sure everything went smooth. You know what I'm saying? I was talking to him the whole time. [voices overlap] |
| PAVIA | Yeah. |
| GOUDELOCK | While he was drivin' and the way them guys did it this time, they left a bag inside the truck and told him to pull up grab it out of the truck and then put the uh, other bag in the truck. The guy said he was gonna be at Kmart watchin'. |
| PAVIA | Okay, okay. So, so – [Voices Overlap] |
| GOUDELOCK | He didn't do it… |
| PAVIA | So… |
| GOUDELOCK | He didn't do it like they usually do it. |

Your affiant believes that GOUDELOCK is describing to PAVIA how he was on the phone with a co-conspirator to ensure the transaction went smoothly. GOUDELOCK continued:

| | |
|---|---|
| GOUDELOCK: | I was talkin' to him on the phone, he said… [Phone rings in background] he was like five [5] minutes away from home and he's like, he's like oh shit, cuz, the sheriff's pullin' me over. Sheriff's don't usually pull nobody over. You know what I'm sayin'? |
| PAVIA: | Yeah, yeah – [Voices Overlap] |
| GOUDELOCK: | So, he's like, "The sheriff's pullin' me over." So, that had to be somethin' on they end. You know what I'm sayin'? |

Your affiant believes that GOUDELOCK is indicating that the situation did not make sense, and that the arrest of a co-conspirator had to be "somethin' on they end," or the driver of the tractor trailer's fault. Despite this concern, the conversation continued:

| | |
|---|---|
| PAVIA | Shit, well, well…what'cha think? We keep going, or…what you wanna do? |
| GOUDELOCK | We can keep goin', but I say let's just chill for a few weeks then. |

7

Your affiant believes that **GOUDELOCK** is telling **PAVIA** that they should wait a few weeks before continuing their drug trafficking activity. In order to communicate further, **PAVIA** asked **GOUDELOCK**:

| | |
|---|---|
| **PAVIA** | How could I get you…? Uh, I got a, I got a new number. How could I get you…how, how could I give it to you? You got my home phone number, right? |
| **GOUDELOCK** | I just got this one yesterday. |
| **PAVIA** | Okay. I'll call you on that one. |
| **GOUDELOCK** | All right. |
| **PAVIA** | I'll probably throw this one away 'cause I gave the uh, uh, uh…I gave… |
| **GOUDELOCK** | Yeah, I threw the other one away. |
| **PAVIA** | Yeah, I'll throw this one away, too. |

The conversation about rotating to new phones is consistent with **PAVIA** and **GOUDELOCK's** practices of constantly rotating dirty phones throughout this investigation.

14. On August 29, 2018, the Honorable Richard J. Arcara, Senior United States District Court Judge, Western District of New York, authorized the interception of wire and electronic communications occurring over 432-210-8680, a phone number utilized by **PAVIA**.

15. On September 4, 2018, at 4:28 p.m. **PAVIA**, received an incoming call from **GOUDELOCK**, using 716-603-1851. In sum and substance, **PAVIA** told **GOUDELOCK** that they were getting ready to send **GOUDELOCK** a shipment of approximately 20 kilograms of cocaine.

16. **WHEREFORE**, it is respectfully submitted that probable cause exists to believe that **EDGAR PAVIA** and **ADRIAN GOUDELOCK** have violated Title 21, United States Code, Section 846 (conspiracy to possess with intent to distribute 5 kilograms or more of cocaine).

_____
JACK G. WAUGAMAN III
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
this 7th day of September, 2018.

_____
HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge