UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES                                    1:18-CR-138 JLS (MJR)

                                                 REPORT, RECOMMENDATION
                                                 AND ORDER

        v.

EDUARDO ENRIQUE
VALDEZ, et al.,

                          Defendants.

_____

        This case has been referred to the undersigned by the District Court pursuant to

28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive

motions.[1]  (Dkt. No. 24)

## BACKGROUND

        On April 29, 2020, a federal grand jury in the Western District of New York returned

a third superseding indictment (the "Indictment") against defendants Eduardo Enrique

Valdez, Edgar Pavia, Adrian Goudelock, Eric Young, Lance Parker, Jai Hunter, Daniel

Sterling, Martin Lopez, Ivan Rene Rios Bustillos, Adrian Grier, Shamar Davis, and

Gabrielle McGrady.  (Dkt. No. 199)  Count 1 charges all twelve defendants with

conspiracy to possess with intent to distribute, and distribution of, 5 kilograms or more of

cocaine from in or about October 2017 and continuing to on or about December 7, 2018

(in violation of Section 846 of Title 21 of the United States Code); Count 2 charges Valdez,

Pavia, Goudelock, Davis, and McGrady with attempted possession of 5 kilograms or more

of cocaine with intent to distribute on or about October 19, 2017 (in violation of Section

_____

[1] This matter was referred to the undersigned by the Hon. Lawrence L. Vilardo, on June 27, 2018.  (Dkt.
No. 24) On January 3, 2020, this case was reassigned to the Hon. John L. Sinatra, Jr. (Dkt. No. 176)

846 of Title 21 of the United States Code and Section 2 of Title 18 of the United States Code); Count 3 charges Pavia, Goudelock, Young, and Parker with possession of 5 kilograms or more of cocaine with intent to distribute on or about July 25, 2018 (in violation of Sections 841(a)(1) and 841(b)(1)(A) of Title 18 of the United States Code); Count 4 charges Valdez, Pavia, Goudelock, Young, and Parker with money laundering conspiracy beginning in or about October 2017 through on or about September 13, 2018 (in violation of Section 1956(h) of Title 18 of the United States Code). (*Id.*) The Indictment alleges prior Conviction for Serious Drug Felonies with respect to Pavia, Goudelock, Sterling, and Grier. (*Id.*) The Indictment also contains two forfeiture allegations related to various sums of currency recovered in relation to the investigation and prosecution of defendants. (*Id.*)

Defendants Pavia, Goudelock, Young, Hunter, Lopez, Davis and McGrady have filed omnibus discovery motions.[2] (Dkt. Nos. 139, 148, 149, 151, 152, 153, 155) In addition, defendants Young and Davis have moved to suppress physical evidence, and Davis has moved for suppression of identification testimony or, in the alternative, a *Wade* hearing. (Dkt. Nos. 148, 153) The Government has responded to all defense motions and has moved for reciprocal discovery. (Dkt. Nos. 161, 163, 164, 166, 168, 169, 171) The Court heard oral argument as to motions by Young, Davis and McGrady on June 2,

---

[2] As of the date of this Report, Recommendation and Order, defendants Valdez, Sterling, Bustillos, and Grier have entered into plea agreements with the Government, and are awaiting sentencing. Defendant Lance Parker has filed omnibus discovery motions and has moved to suppress statements and evidence. (Dkt. No. 147) This Court granted Parker's request for an evidentiary hearing as to his motion to suppress statements, and a hearing is currently scheduled for November 16, 2020. Following the scheduling of the evidentiary hearing, a change of plea was scheduled before the District Court, as to Parker, for October 22, 2020. (Dkt. No. 257) Thus, Parker's motions remain pending, but will become moot when he enters his change of plea. Therefore, the Court does not rule on any of Parker's motions herein. Should the change of plea not proceed as scheduled, this Court will conduct the evidentiary hearing on November 16, 2020, and will then timely rule on Parker's omnibus and suppression motions.

2020; motions by Pavia, Hunter, and Lopez on June 3, 2020; and motions by Goudelock on June 16, 2020.[3]

## DISCUSSION

The Court will first address Young's and Davis's suppression motions, as well as Davis's request for a *Wade* hearing, before turning to defendants' non-dispositive omnibus discovery requests and the Government's request for reciprocal discovery.

### *Young's Motion to Suppress Physical Evidence* [4]

Young moves to suppress evidence obtained as a result of a July 23, 2018 federal tracking warrant for a tractor trailer bearing Alabama license plate 80TR1932. (Dkt. No. 153, pgs. 5-7)  Young argues that the warrant was issued without probable cause.  (*Id.*) He requests suppression of the evidence obtained or, in the alternative, an evidentiary hearing.  (*Id.*)

"The cornerstone of the modern law of searches is the principle that, to mount a successful Fourth Amendment challenge, a defendant must demonstrate that he personally has an *expectation of privacy in the place searched.*"  *United States v. Hagg*, 278 F.3d 44, 47 (2d Cir. 2002) (internal quotation marks omitted) (emphasis in original). A defendant seeking suppression bears the burden of establishing this standing.  *United*

---

[3] Because Parker's motions remain pending, Speedy Trial Act time is currently excluded, as a matter of law, pursuant to Section 3161(h)(1)(D) of Title 18 of the United States Code.  On September 11, 2020, this Court issued an order indicating that because Parker's motions will be become moot at the time he enters his change of plea on October 22, 2020, the Court would consider the pretrial motions of the remaining defendants submitted, and time would also be excluded, from September 11, 2020 through October 11, 2020, pursuant to Section 3161(h)(1)(h) of Title 18 of the United States Code.

[4] Young also moved to suppress any statements he made to law enforcement at the Erie County Sheriff's Office on July 21, 2018, on the grounds that they were not voluntarily.  (Dkt. No. 153, pg. 4) In response, the Government stated that it is unaware of any statements made by Young to law enforcement on July 21, 2018. (Dkt. No. 166, pg. 8) In fact, the Government indicates that Young declined to speak with law enforcement following his arrest on that date.  (*Id.*)  Thus, Young's motion to suppress statements is denied as moot.

*States v. Pena*, 961 F.2d 333, 336 (2d Cir. 1992). Further, [t]he law is clear that the burden on the defendant to establish standing is met only by sworn evidence, in the form of affidavit or testimony, from the defendant or someone with person knowledge." *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (SDNY 1995); *accord United States v. Smith*, 621 F.2d 483, 487-88 (2d Cir. 1980). To that end, the Federal Rules of Criminal Procedure require the moving party to "serve any supporting [standing] affidavit with the [suppression] motion." *See* Fed. R. Crim. P. 47(d). Further, the Scheduling Order issued by this Court provides that "[a]ny motion to suppress…must initially be accompanied by an appropriate affidavit (or declaration) from an individual with personal knowledge, failing such the Court will normally recommend that the motion be denied without an evidentiary hearing." (Dkt. No. 32)

Here, Young did not include an affidavit of standing as to the tractor trailer when he filed his suppression motion. Instead, his defense counsel requested a thirty-day extension of time to file a standing affidavit. (Dkt. No. 153, pg. 7) Eight months later, when this Court heard oral argument as to Young's suppression motion, defense counsel still had not submitted an affidavit by Young, or anyone else with personal knowledge, establishing the basis for Young's standing to contest the search of the tractor trailer. Because Young has not demonstrated that he possesses standing to contest the tracking warrant for the tractor trailer, his motion to suppress should be denied. *See e.g., United States v. Hemingway*, 05-CR-6108, 2007 U.S. Dist. LEXIS 102656 (WDNY Jan. 3, 2007) (denying defendant's motion to suppress evidence because defendant failed to submit a sworn affidavit or testimony demonstrating a reasonable expectation of privacy); *United States v. Rivera*, 15-CR-6083, 2016 U.S. Dist. LEXIS 79427 (WDNY May 5, 2016)

4

(denying motion to suppress evidence obtained through GPS tracking warrant where defendant repeatedly failed to file an affidavit establishing standing to contest the search of the vehicle); *United States v. Shai Sun*, 18-CR-905, 2020 U.S. Dist. LEXIS 19453 (SDNY Feb. 3, 2020) (where defendant did not submit an affidavit attesting to facts demonstrating a subjective interest of privacy in the vehicle, defendant fails to meet his burden of establishing standing to bring a Fourth Amendment challenge). [5]

Further, even if Young had standing to contest the tracking warrant, the Court finds no basis to hold an evidentiary hearing or suppress the evidence obtained from execution of the warrant. A search warrant issued by an impartial magistrate is presumptively valid. *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993). Where, as here, the Court is reviewing the probable cause determination of an independent magistrate, it asks solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause." *United States v. Wagner*, 989 F.2d 341, 345 (2d Cir. 1983); *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (deference is given to the issuing magistrate).

---

[5] The Court notes that following oral argument as to his suppression motions, Young filed an untimely standing affidavit on June 17, 2020, almost nine months after initially moving to suppress evidence recovered from the tracking warrant. (Dkt. No. 226) Defense counsel submits that the Court should accept Young's late affidavit because of the difficulties presented by the coronavirus pandemic, the fact that Young resides in Alabama, and the existence of a protective order which prevented defense counsel from electronically transmitting discovery for Young's review. (*Id.*) The Court finds counsel's arguments as to why it should consider Young's untimely affidavit to be unavailing. Defense counsel requested a 30-day extension of time to submit a standing affidavit on September 27, 2019. Thus, counsel had at least five months before the start of the coronavirus pandemic to submit a standing affidavit, but failed to do so. Further, counsel has submitted affidavits from Young waiving Young's appearance at Court proceedings, demonstrating that counsel and Young have the capability to communicate and transmit documents between them, despite the fact that counsel resides in New York and Young resides in Alabama. Finally, it is unclear to this Court why a protective order as to discovery would prevent defense counsel from submitting a standing affidavit, which is exclusively based on defendant's personal knowledge as to his expectation of privacy in the tractor trailer. For these reasons, the Court rejects Young's untimely affidavit and has not considered it in determining the recommendations set forth herein.

The tracking warrant for the tractor trailer was issued on July 23, 2018 by the Honorable Jeremiah J. McCarthy, United States Magistrate Judge for the Western District of New York.  The warrant application was supported by a detailed affidavit by Special Agent of Homeland Security Investigations Curtis Ryan.  The Court has reviewed Agent Ryan's affidavit and finds that probable cause existed for Judge McCarthy to issue the tracking warrant on July 23, 2018.[6]

For all of these reasons, the Court recommends that Young's motion to suppress evidence be denied in its entirety.

### Davis's Motion to Suppress Physical Evidence

Davis moves to suppress historical cell-site location records associated with his cellular telephone number, which were obtained through the execution of search warrant issued by the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge for the Western District of New York, on November 14, 2018.  (Dkt. No. 148, pgs. 2-6)  Davis also moves to suppress evidence obtained from three cell phones found in his possession at the time of his arrest on a federal arrest warrant.  (*Id.* at pgs. 7-8)  All three cell phones were searched pursuant to a warrant issued by the undersigned on February 8, 2019.[7] (*Id.* at pgs. 7-8)  Davis argues that neither the November 14, 2018 search warrant nor the February 8, 2019 search warrant were supported by probable cause.  He submits that (1)

---

[6] The Court also notes that no hearing is warranted here pursuant to the standard set forth in *Franks v. Delaware*, 438 U.S. 154 (1978).  There has been no showing that the search warrant application contained any materially false statement that was included knowingly, intentionally, or with reckless disregard for the truth.

[7] Davis filed a timely affidavit of standing in support of his suppression motion.  (Dkt. No. 148-2)  Davis states that he owned and used cell phones associated with Sprint cellular number 716-316-1795, the "target telephone number" associated with the November 14, 2018 search warrant.  (*Id.*)  Davis also claims ownership in the three cell phones named in the February 8, 2019 search warrant, which were in his vehicle at the time of his arrest.  (*Id.*)

the information provided is stale; (2) the allegations in both warrants are insufficient because they establish only that he was in proximity to others engaged in criminal activity, which is not a crime; and (3) there are no allegations in either warrant that he had ongoing contact with a criminal organization or conspiracy  Davis contends that all evidence obtained through execution of the warrants should be suppressed.[8]

Probable cause "is not a high bar." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014).  It "requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). *See also United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (finding probable cause "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found.")  Probable cause requires a court to consider "the whole picture", rather than the facts in isolation. *District of Columbia v. Wesby*, 138 S. Ct. 577 (2018). Moreover, "[t]he fact that an innocent explanation may be consistent with the facts as alleged however, does not negate probable cause." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985).

The November 14, 2018 warrant application for historical cell-site location information was supported by a detailed affidavit from Special Agent of Homeland Security Investigations LeRoy Oswald III.[9]  The affidavit describes law enforcement's extensive investigation of a major narcotics trafficking operation involving Pavia, Valdez, Goudelock and others, with connections to Buffalo, New York; El Paso, Texas; Cleveland,

---

[8] Here again, no *Franks* hearing is warranted. There has been no showing that either search warrant application contained any materially false statement that was included knowingly, intentionally, or with reckless disregard for the truth.

[9] Special Agent Oswald's affidavit also fully incorporated, by reference, a detailed affidavit from Special Agent of Homeland Security Investigations Gregory Mango, submitted previously with respect to another search warrant application related to this case.

7

Ohio; and Mexico. The affidavit sets forth evidence indicating that Davis and Goudelock traveled to Cleveland, Ohio on October 3, 2017 and met-up with Pavia and Valdez. A controlled delivery occurred two weeks later, on October 19, 2017. At that time, Valdez was apprehended by law enforcement and found to possess 10 kilograms of "sham" cocaine and approximately $274,000. Law enforcement later learned that Goudelock and Davis possessed a black duffle bag filled with currency on October 19, 2017, shortly before Valdez was arrested. The affidavit further explains that on July 25, 2018, law enforcement seized 17 kilograms of cocaine and $664,960, as a result of intercepted communications between Goudelock and Pavia. Evidence showed that Goudelock used a "dirty phone" to communicate with Pavia.[10] Between July 25 and 26, 2018, Goudelock's "dirty phone" exchanged 5 text messages and 3 calls with Davis' cell phone, with one call occurring shortly after the seizure. In addition, the affidavit describes how drug traffickers often switch the SIM cards in their cell phones to avoid detection, and that Davis changed cellular devices and SIM cards at least two times between October 1, 2017 and July 27, 2018.

The February 8, 2019 warrant application was supported by a detailed affidavit from Special Agent of Homeland Security Investigations Gregory Mango. Mango's affidavit contained much of the same information as Agent Oswald's supporting affidavit, including an explanation of the background of the investigation; Davis's relationship with Pavia, Valdez and Goudelock; Davis's connection to the October 2017 seizure of "sham" cocaine and currency; and his switching of SIM cards in a short period of time. Agent

---

[10] The affidavit applications explain that a "dirty phone" refers to a cellular telephone used primarily, if not exclusively, to facilitate illegal activity between co-conspirators at risk of arrest and prosecution.

Mango's affidavit also states that at the time of Davis's arrest pursuant to a federal warrant on December 14, 2018, he was found to be in possession of several items of expensive jewelry, including a Rolex watch; $1,293.87 in United States currency; and a large duffle bag filled with folded clothing. In addition, one of the phones was damaged in a manner consistent with someone attempting to destroy the phone.

The foregoing information, combined with all the other information and evidence set forth in the supporting affidavits of Agents Oswald and Mango, establishes probable cause for issuance of the October 14, 2018 search warrant for historical cell-site location information and the February 8, 2019 search warrant for three cell phones. In reaching this conclusion, the Court has taken into account both the totality of the circumstances described in the warrant applications, in addition to the deference that must be paid, by a reviewing court, to the probable cause finding of a judicial officer.

Lastly, the Court finds that even if the October 14, 2018 and February 8, 2019 search warrants were issued without sufficient probable cause, the good faith exception to the exclusionary rule would prevent suppression here. In *United States v. Leon*, the Supreme Court held that the exclusionary rule does not apply where "an officer acting with an objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. 897, 918-21 (1984). The good faith exception does not apply where: (1) the issuing magistrate was knowingly misled; (2) the issuing magistrate knowingly abandoned their judicial role; (3) the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; or (4) the warrant is so facially deficient that reliance upon it would be unreasonable. *Id.* at 923. The record here is wholly devoid of evidence that any exception to *Leon* would apply in this case.

For all of these reasons, the Court recommends that Davis's motion to suppress evidence be denied in its entirety

### Davis's Motion to Suppress Identification Evidence and Request for Wade Hearing

Davis moves to suppress identification evidence or, in the alternative, to be granted a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967).  (Dkt. No. 148, pgs. 6-7)  Davis submits that on October 16, 2018, an unknown witness identified him, through a photograph, as an individual traveling with various co-defendants between Cleveland and Buffalo in early October 2017.  Davis argues that a hearing is necessary to determine whether the out-of-court identification resulted from an impermissibly suggestive procedure, and, if so, whether that procedure is independently reliable.  (*Id.*)  The Government responds that no *Wade* hearing is needed because the identifying witness is personally acquainted with Davis and has first-hand knowledge of his participation in the narcotics conspiracy. (Dkt. No. 171, pg. 13)  During oral argument of the motions, the Government represented that because the witness in question is a confidential source, the Government has not, at this time, provided additional details as to how the witness is personally acquainted with Davis.

A trial witness may identify a defendant if: (1) an out-of-court identification procedure was not improperly suggestive; or (2) the in-court identification is grounded on "an independent basis in memory."  *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir. 1977).  The Supreme Court has explained that "[w]hen an identification results from circumstances that are not police arranged, the defendant is not entitled to a pre-trial hearing regarding the identification; rather, he is entitled to the constitutional safeguards available at trial, namely compulsory process and cross-examination, in challenging the

reliability of the identification testimony." *Perry v. New Hampshire*, 565 U.S. 228, 231-33 (2012). Thus, *Wade* hearings are not required for confirmatory identifications where the witness is sufficiently familiar with the defendant so as to negate the possibility of suggestiveness. *See United States v. Stephenson*, 1:17-CR-00199, 2020 U.S. Dist. LEXIS 80091 (WDNY Feb. 24, 2020); *United States v. Busch*, 09-CR-331, 2013 U.S. Dist. LEXIS 18759 (WDNY Feb. 12, 2013). *See also United States v. Shakur*, 82 Cr. 312, 1987 U.S. Dist. LEXIS 47 (SDNY Jan. 9, 1987) (denying request for *Wade* hearing relating to photographic identifications by witnesses who had "extensive, personal contacts with [defendant] in both licit and illicit activities.").

Based upon the Government's representations that the witness is personally acquainted with Davis, it is foreseeable that the witness's ability to identify Davis will not be a disputed issue at trial. Thus, there is no basis to either suppress the identification testimony or conduct a *Wade* hearing at this time. However, the identities of Government witnesses and summaries of their anticipated testimony have not yet been disclosed. When this information is provided, the trial court will be in a better position to determine if either a *Wade* hearing or *voir dire* outside the presence of the jury are necessary. Therefore, the Court denies Davis's motion to suppress and alternative request for a *Wade* hearing without prejudice for renewal before the District Court at the time of trial.

The Court now turns to Pavia's, Goudelock's, Young's, Hunter's, Lopez's, Davis's, and McGrady's outstanding omnibus discovery motions and the Government's motion for reciprocal discovery. The Court's rulings are as follows:

*Motion for Joinder*

Each defendant has moved to join in the discovery motions made by his co-defendants. (Dkt. No. 139, ¶39-¶40; Dkt. No. 148, pg. 23; Dkt. No. 149, ¶14; Dkt. No. 151, pg. 22; Dkt. No. 152, pg. 35; Dkt. No. 153, pg. 9; Dkt. No. 155, ¶7) The Government opposes joinder on the basis that it has not been given sufficient notice and cannot appropriately respond to each request.

The majority of the discovery issues raised herein apply to all defendants, and defendants have made numerous overlapping requests. The Court has thoroughly reviewed the papers submitted in this matter and finds that the Government has had an opportunity to substantively respond to all of the arguments made by defendants, and that joinder would not prejudice the Government. The request for joinder is granted with the further directive and findings that the decisions made by this Court as to each defendant's motions shall also be deemed a finding and order as to all other defendants in this case, to the extent relevant. Therefore, in the discussion below defendants Pavia, Goudelock, Young, Hunter, Lopez, Davis and McGrady will be referred to collectively as "defendants." In the event an issue or motion applies only to one or more specific defendant, the Court will so note.

*Rule 16 Discovery*

Defendants move for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16.[11]  (Dkt. No. 139, ¶14-¶26; Dkt. No. 148, pgs. 14-19; Dkt. No. 149, ¶3-¶7; Dkt. No. 151, pgs. 1-10; Dkt. No. 152, pgs. 13-19; Dkt. No. 153, pg. 3; Dkt. No. 155, ¶5)  Defendants also seek expert disclosures pursuant to Rule 16(a)(1)(e) and Federal Rules of Evidence 702, 703 and 705.  (*Id.*)

Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant.  While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the government's case against him."  *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974).  Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Federal Rules of Evidence 702, 703 and 705.  *See* Fed. R. Crim. P. 16(a)(1).  Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal government documents made by an attorney for the

---

[11] As part of his Rule 16 discovery requests, Goudelock sought preclusion of "improperly obtained evidence." (Dkt. No. 152, pg. 17) He generally states that he was seen on October 17, 2017 with a "black bag stuffed with money" and that this sighting provides the basis for a search warrant lacking in probable cause. (*Id.*) Goudelock does not specify (1) which search warrant he is referring to (the Government submits that defendant has been provided with 60 search warrants and their associated applications); (2) the factual basis on which he is moving to suppress the evidence; or (3) the actual evidence he seeks to suppress.  He also fails to submit a standing affidavit with facts to support a suppression motion.  Thus, to the extent that Goudelock is attempting to challenge or suppress evidence obtained pursuant to a search warrant, his motion is plainly inadequate and should be denied.  Goudelock also moved to suppress statements.  At oral argument, the Government submitted that there are no statements by Goudelock to law enforcement. Thus, this motion is denied as moot.

government or other government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Here, the Government responds that it has provided all discovery required by Rule 16, or has made such discovery available for inspection by defense counsel, pursuant to the terms of the Protective Order issued on February 21, 2019. The Government further submits that it has provided defendants with copies of all documents and recordings which the Government may introduce at trial. The Government sets forth a detailed and extensive list of the voluminous discoverable material provided or made available to defense counsel in this case, including, *inter alia*, jail calls; defendants' criminal records; numerous reports of investigation from law enforcement agencies; surveillance photos; lab reports; lists of seized cell phones and images from seized cellular phones; documents and photos from various search warrants; border crossing information; hotel information; receipts, cell phone extractions; surveillance logs; pen register applications and orders; search warrants for historical cell-sites; applications and search warrants for premises, vehicles, and cellular devices; tracking warrants and warrants for cell-site simulators; Title II applications and orders; over 200 transcripts from interceptions of wire communications; historical phone records; airline records and passenger manifests; arrest video of Sterling, Lopez and Bustillos; and pole camera footage.[12]    The Government indicates that it is aware of its obligations to provide continuing Rule 16 discovery, should additional material become known to the Government, and agrees to

---

[12] Young specifically requested information regarding a drug detection canine referenced in a search warrant application. Specifically, Young sought training materials, certifications, records of performance on training exercises, and any records of false positives. During oral argument on Young's motions, the Government indicated that it would provide these materials to defense counsel.

comply with this requirement. The Government also represents that it intends to use all items of evidence that defendants have been provided with or have been made aware of in accordance with Rule 12(b)(4)(A) of the Federal Rules of Criminal Procedure.

Based upon the representations made by the Government in their written responses, defendants' request for discovery pursuant to Rule 16 is denied as moot.[13] The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c). The Government is also reminded of its continuing obligations pursuant to Rule 12(b)(4)(B). Finally, the Government is expected to comply with all requirements in Rule 16, Federal Rules of Evidence 702, 703, and 705, and Judge Sinatra's pretrial order as they apply to expert witnesses and testimony.

### *Witness Identities and Statements*

Defendants request disclosure of Government witness identities and statements.[14] (Dkt. No. 139, ¶58-¶59; Dkt. No. 148, pgs. 10-11; Dkt. No. 149, ¶9; Dkt. No. 151, pgs. 11, 20-21; Dkt. No. 152, pg. 19; Dkt. No. 153, pg. 8; Dkt. No. 155, ¶5) Defendants further request copies of any notes or reports taken during witness interviews or obtained during the investigation.[15]    (*Id.*)

---

[13] During the course of discovery, a dispute arose between the Government and counsel for Lopez regarding the scope of a protective order governing the discovery materials provided by the Government. The Court heard oral argument as to the dispute on February 26, 2020, at which time the Government and defense counsel resolved the issue and agreed to a modified protective order. (Dkt. Nos. 188, 194)

[14] Some defendants have requested witness statements at least 48 hours before trial, others have requested disclosure at least 30 days before trial.

[15] Lopez indicates that if a statement is made in a language other than English, defendants request a copy of the original statement and/or testimony in the original language as well as any and all translations provided, including any audio or video records of such statements or testimony. (Dkt. No. 139, ¶60) The Court grants this request.

The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession and relate to the subject matter of the witness's direct testimony ("3500 material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate that they be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

The Government indicates that it will disclose all 3500 material, in advance of trial, and at the time set forth by the District Court in accordance with its usual practice. In some responses to the pretrial motions, the Government specifically indicates that it will provide *Jencks* material two weeks prior to trial. (Dkt. No. 161, pg. 10; Dkt. No. 164, pg. 18; Dkt. No. 168, pg. 9) The Government further notes that it has disclosed over 200 Reports of Investigation as well as surveillance logs. In light of these representations, defendants' request for early disclosure of witness identities and statements is denied as

moot.[16]

### Brady and Giglio Materials

Defendants move for the disclosure of any favorable, exculpatory or impeachment materials pursuant to Brady, Giglio and their progeny. (Dkt. No. 139, ¶47-¶52; Dkt. No. 148, pgs. 11-14; Dkt. No. 149, ¶8; Dkt. No. 151, pgs. 13-20; Dkt. No. 152, pgs. 19-31; Dkt. No. 153, pg. 9; Dkt. No. 155, ¶5)

The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. Brady v. Maryland, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. See Giglio v. United States, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Evidence may be material for Brady purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. United States v. Gill, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a

---

[16] To the extent defendants are requesting statements of non-testifying witnesses, their motions are denied. There is no obligation that the Government produce the statements of individuals who are not testifying at trial. United States v. Rigas, 583 F.3d 108, 125-26 (2d Cir. 2009). However, in the event a non-testifying witness's statement contains exculpatory information or information that would impeach the credibility of a Government witness, that material is subject to disclosure pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963) and Giglio v. United States, 405 U.S. 150, 154-55 (1972).

defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

Here, the Government acknowledges its affirmative duty to provide defendants with exculpatory evidence, as well as evidence that the defense might use to impeach the Government's witnesses at trial. The Government represents that it is aware of its obligations and responsibilities under *Brady* and acknowledges its continuing duty under *Brady* to produce such material, if and when it is made aware of it. In addition, the Government agrees to provide impeachment *Giglio* material, *i.e.*, promises of leniency or immunity agreements with government witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such, criminal arrest records of all prosecution witnesses, immoral, vicious or criminal acts committed by witnesses, prior inconsistent statements, any payments to witnesses or family members thereof, and all other promises or considerations given by government personnel to government witnesses or family members thereof, in accordance with the schedule set by the District Court prior to trial and no later than when the Government produces and delivers the *Jencks* material. Given the Government's representations and for the reasons just stated, defendants' motion to compel the production of *Brady/Giglio* material is denied as moot. The Government is reminded of its continuing *Brady* obligations and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendants. *See United States v. Padovani*, 14-CR-00224, 2016 WL 5402696, at *4 (WDNY Sept. 28, 2016).

*Bill of Particulars*

Defendants move for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. (Dkt. No. 139, ¶1-¶5; Dkt. No. 148, pgs. 8-9; Dkt. No. 149, ¶10-¶12; Dkt. No. 152, pgs. 4-7; Dkt. Nos. 153, pgs. 3-4; Dkt. No. 155, ¶6) Defendants seek, *inter alia*, information as to the exact time, date and place the alleged offenses or acts in furtherance of the conspiracy occurred; a description of each overt act committed in furtherance of the conspiracy and who is alleged to have committed each act; a list of all charged and uncharged co-conspirators; the exact amounts of narcotics involved; the identities of the alleged drug purchasers; the date and time each defendant joined the alleged conspiracy; details as to which individuals were present during the acts undertaken in furtherance of the conspiracy and whether any of those individuals were acting for the Government; whether knowledge of the possession and distribution of controlled substances was actual or constructive; the precise conduct which establishes the elements of the conspiracy; when each participant left the conspiracy, as well as when the conspiracy ended; and the nature of the agreement of the conspiracy. (*Id.*)

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal

theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (SDNY 2003). In determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (SDNY 1983). It is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). Further, a defendant is not generally entitled to receive details of the government's conspiracy allegations through a bill of particulars. *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (EDNY 2006).

The charges here are neither complex nor difficult to understand. They involve, generally, a conspiracy to distribute narcotics over a period of a few months, the possession of narcotics with intent to distribute on two specific dates, and money laundering. The Indictment specifies the types and the approximate amounts of the illegal substances involved. As noted above, the Government has provided extensive discovery to defendants, which includes 200 transcripts of intercepted communications, over 200 reports of investigation, and 60 search warrant applications. In fact, the Government represents that the discovery in this case encompasses 20,000 pages of documents in addition to multi-media evidence.

Considering the allegations in the Indictment in conjunction with the materials produced in discovery, the Court finds that defendants have been provided with sufficient information to inform them of the charges against them, prepare a defense, avoid surprise at trial, and ensure against double jeopardy. The additional details sought by defendants amount to an attempt to use a bill of particulars as a discovery device. *See e.g., United States v. Biaggi*, 675 F. Supp. 790, 809 (SDNY 1987) (defendants request for "each

alleged date, time, person present, place, nature of conversation [and] amount" is an "impermissible attempt to compel the Government to provide evidentiary details of its case."); *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (SDNY 2001) (denying request for "names of all co-conspirators and/or aidors and abettors...of the defendant"); *United States v. Barret*, 824 F. Supp. 2d 419, 439 (EDNY 2011) (the nature of the wheres, when and with whoms of a conspiracy are frequently held to be beyond the scope of a bill of particulars since the government "is not required to prove exactly when or how a conspiracy formed or when or how a particular defendant joined the scheme"); *United States v. Walker*, 922 F Supp. 732, 739 (NDNY 1996) (overt acts in furtherance of a conspiracy need not be disclosed); *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (finding that the district court acted well within its discretion denying defendant's request for a bill of particulars specifying when he joined the conspiracy, the identity of unindicted co-conspirators, and the precise dates and locations he was alleged to have transported heroin).  For these reasons, defendants' request for a bill of particulars is denied.

### *Disclosure of Informants' Identities and Files*

Defendants move for disclosure of the names, addresses and criminal records of all informants used by the Government in the course of its investigation.  (Dkt. No. 139, ¶6-¶13; Dkt. No. 151, pgs. 21-22; Dkt. No. 152, pgs.7-8)  Defendants also seek all potential impeachment material as to Government informants, including any files kept by law enforcement with respect to these individuals and any benefits derived by these individuals based on their cooperation.  The Government objects to this request on the grounds that defendants have not shown a particularized need for the information.

The Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses. *See Rovario v. United States*, 353 U.S. 53, 60-62 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity).  The informant's privilege must give way, however, if disclosure is essential to a defense or the fair determination of the case. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983).  To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence. *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of establishing that disclosure is essential to the defense); *Lilla*, 699 F.2d at 105 ("this requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial"); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (defendant need not show that the informant's testimony would actually be helpful to the defense, but instead "the events to which a witness might testify, and the relevance of those events to the crime charged").

Defendants here have not met their heavy burden with respect to early disclosure of informant identities or impeachment materials.  They do not offer examples of specific testimony or information these informants might provide.  Instead, defendants argue that in order to prepare an adequate defense, they must be able to interview the informants and otherwise investigation their allegations, biases, and any benefits they have or will derive from cooperating with the Government.  Defendants also contend that they are entitled to information about any informants who participated in the criminal transactions. Defendants' explanation as to how informants would provide information material or

necessary to their defense at this stage in the proceeding is speculative. If and when the informants are to be called as witnesses at trial, defendants will have access to their identities as well as all relevant impeachment material, prior statements and notes of their interviews. In addition, if the informants reveal exculpatory information at any time, the Government has an ongoing duty to disclose this information in time for its effective use at trial. Thus, defendants' motion for disclosure of informant identities and impeachment material is denied.

### Co-Conspirator Statements

Defendants move for disclosure of any co-conspirator statements the Government will seek to introduce at trial, as well as an order barring the introduction at trial of any post-arrest statements by non-testifying co-conspirators. (Dkt. No. 148, pg. 21; Dkt. No. 151, pg. 12; Dkt. No. 152, pg. 3) The Government responds that many co-conspirator statements have been provided in the form of intercepted communications. The Government further submits that it will proffer evidence in support of the admission of out-of-court co-conspirator statements at the time required by the District Court, and that its timely disclosure of documents and 3500 material will be more than sufficient to support a preliminary finding, by the trial court, as to a foundation for admission of co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).

Rule 16 does not provide for the disclosure of co-conspirator statements. To the extent that the statements in question constitute 3500, *Giglio* or *Brady* material, those statements will be disclosed in accordance with the procedures discussed above. It also appears that the Government has already disclosed many co-conspirator statements in its extensive discovery production. Otherwise, Federal Rule of Evidence 801(d)(2)(E)

does not contain a requirement as to pretrial notice of statements. In addition, the admissibility of any co-conspirator statements, as well as any *Bruton* implications and requests for severance, are best addressed by the District Judge at the time of trial. *United States v. Anguiera*, 11-CR-116; 2012 U.S. Dist. LEXIS 51862 (WDNY April 12, 2012) ("[T]he relief sought for excluding non-testifying co-conspirator statements…[i]s better considered by the District Judge prior to trial and deferred for that consideration.")

Therefore, defendants' requests for disclosure and exclusion of certain co-conspirator statements are denied without prejudice to renewal before Judge Sinatra at the time of trial. The Court further instructs that any motions for severance, based on either *Bruton* or other grounds covered by Federal Rule of Criminal Procedure 14, are to be made to Judge Sinatra pursuant to the directives in this Court's Scheduling Order.[17] (Dkt. No. 32) *See United States v. Mireles*, 08 CR 34, 2009 U.S. Dist. LEXIS 109176 (WDNY Nov. 23, 2009) (Severance motions "are more appropriately heard and determined by the trial court, which is in the best position to rule on the issues presented.")

### *Release of Grand Jury Transcripts*

Defendants move for disclosure of grand jury transcripts and minutes. (Dkt. No. 139, ¶27-¶28; Dkt. No. 148, pg. 10; Dkt. No. 151, pg. 3; Dkt. No. 152, 33-34) The Government opposes this request.

The Government has an obligation to disclose any grand jury testimony that constitutes 3500, *Brady* or *Giglio* material. Notwithstanding this material, a defendant is not entitled to inspect grand jury minutes and evidence without producing "concrete

---

[17] Lopez specifically moves for severance of the charges against him and a separate trial pursuant to Rule 14(b). (Dkt. No. 139, ¶29-¶38) The Court denies the motion without prejudice to Lopez's ability to renew his motion before Judge Sinatra.

allegations of government misconduct." *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).  Defendants have not made any such allegations here.  Instead, they state only that the material is necessary to "ascertain whether further pretrial challenges to the government's case are necessary" and "to adequately prepare to defend this case at trial".  Defendants also argue that they are "subject to a bare bones indictment that does not set forth any particularized or overt acts."   These arguments are insufficient to entitle defendants to view grand jury material, especially considering the extensive discovery provided by the Government here.  *See United States v. Ulbricht*, 858 F.3d 71, 106-107 (2d Cir. 2017) (to be entitled to disclosure of grand jury proceedings, a defendant must show a particularized need that outweighs the strong government and public policy interests in the secrecy of grand jury proceedings); *United States v. Ayeki*, 289 F. Supp. 2d 183, 186 (D. Conn. 2003) ("grand jury proceedings carry a presumption of regularity, and a review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct.")  Therefore, to the extent that defendants request grand jury material that is not also 3500, *Brady* or *Giglio* material, the request is denied.

> ### *Voir Dire of Expert Witnesses*

Defendants move for an order allowing *voir dire* of any Government experts outside the presence of the jury.  (Dkt. No. 139, ¶41-¶46)  Determinations as to the manner of *voir dire* of experts are to be made by the District Judge at the time of trial. Therefore, defendants' motion is denied without prejudice to renewal before Judge Sinatra.

*Rule 404(b) and Impeachment Evidence*

Defendants move for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. No. 139, ¶53-¶57; Dkt. No. 148, pg. 20; Dkt. No. 151, pg. 11; Dkt. No. 152, pgs. 31-32; Dkt. No. 153, pg. 9)  Defendants also move for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609.  (*Id.*)  The Government states that it will disclose any evidence in its possession which might fall under the ambits of Rules 404(b), 608, and 609 when directed to do so by the trial court.  The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant.  *See* Fed. R. Evid. 404(b).  Based upon the Government's representation that it will disclose Rule 404(b) evidence and impeachment evidence when required to do so by the District Court, defendants' motion is denied as moot.  The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of Judge Sinatra at the time of trial.

*Motion to Strike Aliases*

Davis moves to strike the alias "Fat Boy" from the Indictment.  (Dkt. No. 148, pgs. 22-23)  Davis argues the alias constitutes impermissible surplusage and that, in the context of a narcotics case, it will create an improper inference that his weight is somehow the product of "a rich lifestyle derived from conspiracy profits."  *(Id.)*  Goudelock also moves to preclude the Government from use of his alleged aliases at trial, including "AD", "Ace", or "Ace Boogs." (Dkt. No. 152, pg. 18)  Because these requests pertain to how the Indictment will be presented to the jury, as well as what evidence the jury will be permitted

to hear, it is to be determined by the trial judge.  Defendants' motion to strike aliases is denied without prejudice for renewal before Judge Sinatra at the time of trial.

### Motion for an Audibility Hearing

Goudelock moves for an audibility hearing to determine whether any recordings that the Government seeks to introduce at trial are audible.  (Dkt. No. 152, pg. 36) However, defendant has not specified which recordings he contends are inaudible.  The Government agrees that an audibility hearing is necessary if the parties cannot resolve an issue of audibility, but notes that no audibility issues have been presented by defense counsel to the Government for review and possible resolution. (Dkt. No. 164, pg. 28)  The Government and defense counsel are instructed to meet and confer as to any recordings which the Government seeks to introduce at trial and which defendant contends are inaudible.  Should a disagreement arise, the holding of an audibility hearing is deferred to Judge Sinatra at the time of trial.

### Preservation of Rough Notes

Defendants move for preservation of all rough notes taken as part of the investigation, whether or not the notes are incorporated into official records.  (Dkt. No. 139, ¶62-64; Dkt. No. 148, pg. 22; Dkt. No. 152, pg. 33)  The Government does not object to this request. The Court grants defendants' motion and directs the Government to arrange for the preservation of all rough notes.

### Leave to Make Additional Motions

Defendants also move to reserve the right to make further motions as necessary. (Dkt. No. 139, ¶65-¶70; Dkt. No. 148, pg. 23; Dkt. No. 149, ¶13; Dkt. No. 151, pg. 23; Dkt. No. 152, pg. 36; Dkt. No. 153, pg. 9; Dkt. No. 155, ¶8)  To the extent that defendants

intend to bring motions based upon new information or evidence that has not yet been disclosed, their request for leave to file additional motions is granted. To the extent that defendants intend to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendants' request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.

### *Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of defendants and which defendants intend to introduce as evidence at trial, the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case, and a written summary of any expert witness testimony. The Government's motion for reciprocal discovery is granted, and defendants are reminded that their disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Eric Young's and Shamar Davis's motions to suppress evidence be denied, and that Davis's motion to suppress identification testimony and hold a *Wade* hearing be denied without prejudice. (Dkt. No. 148, 153) It is ordered that defendants Edgar Pavia's, Adrian Goudelock's, Eric Young's, Jai Hunter's, Martin Lopez's, Shamar Davis's, and Gabrielle McGrady's omnibus discovery demands are decided in the manner detailed above. (Dkt. Nos. 139, 148, 149, 151, 152, 153, 155)

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Sinatra.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED**.


Dated:  October 9, 2020
        Buffalo, New York


MICHAEL J. ROEMER
United States Magistrate Judge