UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,



v.

ADRIAN GOUDELOCK,

      Defendant.
_____

18-CR-138 (JLS)

### DECISION AND ORDER

      The Third Superseding Indictment charged Adrian Goudelock with attempted possession and possession of five kilograms or more of cocaine with intent to distribute, and conspiring to do so, and with conspiring to launder money. After a month-long trial, the jury convicted Goudelock on each of the four counts and found him responsible for at least five kilograms of a mixture or substance containing cocaine on Counts 1 through 3.

      After the Government rested, Goudelock moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on all counts. The Court denied his motion from the bench after hearing argument. *See* Dkt. 477.

      Goudelock then filed written post-trial motions—specifically, a renewed motion for a judgment of acquittal on each count and a motion for a new trial. Dkt. 694. The Government responded in opposition (Dkt. 714), and Goudelock did not reply. For the reasons below, the Court denies Goudelock's motions for a judgment of acquittal and a new trial.

## DISCUSSION

I. **Motion for a Judgment of Acquittal**

Goudelock asks the Court to grant him a judgment of acquittal on Counts 1 through 4 of the Third Superseding Indictment on the ground that insufficient evidence exists to support the convictions.

Federal Rule of Criminal Procedure 29 directs the Court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court must affirm a defendant's conviction "if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). A defendant challenging his conviction under this standard "bears a very heavy burden." *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992).

When assessing a Rule 29 motion, the Court must: (1) view the evidence in the light most favorable to the Government; (2) draw all reasonable inferences in the Government's favor; and (3) consider the evidence in its totality—not in isolation. *See Cote*, 544 F.3d at 98. The Government "need not negate every possible theory of innocence." *Id.* The Court must defer to the jury's assessment of credibility, and may not "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *Id.* at 99 (internal quotation marks, citation, and alteration omitted). In other words, "when there are competing inferences, [the Court] must defer to the jury's choice, because it is the task of the jury, not the [C]ourt, to choose among competing inferences that can be drawn from the

2

evidence." *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) (internal quotation marks and citation omitted).

A.   Count 1

Sufficient evidence exists for a rational jury to find Goudelock guilty of the conspiracy charged in Count 1—and to find him responsible for five kilograms or more of a mixture or substance containing cocaine.

For a conviction on Count 1, the Government had to prove beyond a reasonable doubt that: (1) two or more persons entered into the unlawful agreement charged in Count 1; (2) Goudelock knew the general nature and extent of the unlawful agreement; and (3) Goudelock knowingly and willfully became a member of the conspiracy. *See United States v. Davis*, 632 F. App'x 8, 10 (2d Cir. 2015); *United States v. Santos*, 541 F.3d 63, 70–71 (2d Cir. 2008); *see also United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008).

The charged conspiracy to possess with intent to distribute, and to distribute, cocaine spanned from October 2017 to December 2018. *See* Dkt. 199. The first significant event in the conspiracy occurred on October 3, 2017. Co-conspirators Eduardo Valdez and Edgar Pavia testified about their meeting with Goudelock and Shamar Davis on that date in Cleveland, Ohio.

Valdez explained that, after having dinner together at a TGI Fridays in Cleveland, the group drove to a McDonald's, where they met a woman with whom they caravanned to a separate location to obtain a tire secreted behind garbage bags. Valdez loaded the tire into one of the vehicles and returned to Buffalo. After arriving

at an apartment complex in Buffalo, which Goudelock[1] let Valdez and Pavia into, Goudelock left and returned later with the tire. Valdez opened the tire to reveal ten bricks of cocaine, totaling ten kilograms. Valdez explained that, over the next couple of weeks, Goudelock went back and forth to the apartment multiple times a day, taking bricks of cocaine and dropping off money.

Pavia's testimony about the TGI Fridays dinner and the events that followed corroborated Valdez's testimony and provided further details. For example, Pavia testified that he communicated via telephone with his source of cocaine during the dinner, and learned that he would obtain cocaine that evening. He also testified about the group's movement around Cleveland and to Buffalo, in a manner that substantially reflected Valdez's testimony. Pavia also testified that the tire contained ten kilograms of cocaine, and that he remained at the apartment for several weeks, waiting for Goudelock and Davis to sell the cocaine. Like Valdez, Pavia testified that Goudelock and Davis traveled to and from the apartment during that time, exchanging money for kilograms of cocaine. And Pavia explained how he taught Goudelock and Davis to wrap the drug proceeds.

The next significant event occurred on October 19, 2017. Valdez testified that he received a ride from the apartment complex to a parking lot near a hotel. He went to the meeting place with more than $270,000 in cash and met a person with whom he

---

[1] Valdez referred to Goudelock as Ace throughout his testimony. At the beginning of his testimony, he identified Goudelock in the courtroom, and identified Goudelock as Ace.

4

exchanged a bag of money for a bag he believed to contain bricks of cocaine.[2] After completing the exchange, Valdez called Goudelock to tell him the exchange was complete. Valdez was arrested the same day.

Another significant event[3] in the conspiracy occurred on July 25, 2018, when law enforcement seized seventeen kilograms of cocaine from co-defendant Lance Parker after Parker exchanged currency for cocaine with co-defendant Eric Young. Pavia testified about phone calls between him and Goudelock the week prior, in which Pavia told Goudelock the price of the ten kilograms of cocaine Goudelock would receive.[4] Pavia also testified about numerous phone calls between himself and Goudelock on July 25, 2018, during which they discussed the packaging and allocation of money, as well as the amount of cocaine expected to be delivered—now seventeen kilograms instead of the previously discussed ten. And Pavia testified about a phone call he received from Goudelock on the afternoon of July 25, during which Goudelock said his cousin was pulled over by law enforcement with the seventeen kilograms of cocaine.[5]

---

[2] In fact, the bricks were sham cocaine, and the exchange was a controlled delivery planned by law enforcement after seizing ten kilograms of cocaine days earlier.

[3] The Government also presented evidence about the events of June 21 and 22, 2018, involving Goudelock and co-defendant Jai Hunter's movement around the City of Buffalo, transporting and stashing additional kilograms of cocaine. The Court discussed these events in more detail in its decision and order denying Hunter's post-trial motion. *See* Dkt. 730.

[4] The Government also offered into evidence the phone calls, which were intercepted pursuant to Title III, and played them for the jury.

[5] The Government also offered into evidence—and played for the jury—these July 25, 2018 calls between Pavia and Goudelock.

5

Testimony from Pavia and Valdez, alone, supports Goudelock's conviction on Count 1. *See United States v. Castelin*, 597 F. App'x 22, 23 (2d Cir. 2015) ("[T]he government put on testimony from two cooperating witnesses, both of whom testified to events from which a reasonable jury could conclude that [the defendant] knew that he was participating in a drug-trafficking scheme."). But the Government also presented evidence to corroborate Pavia and Valdez's testimony—for example, historical cell-site data indicating that Goudelock's cell phones were in close proximity to theirs on October 3, 2017, and call records from times during or in close proximity to significant events in the conspiracy. And the Government presented communications between and among Goudelock and his co-conspirators intercepted pursuant to Title III, like the July 2018 calls discussed above.

Goudelock argues that he was a mere purchaser of cocaine, and not a co-conspirator. *See* Dkt. 694, at 8–9. In particular, he argues that "his mere presence [and] discussions and arrangements with [his] codefendants are indicative of nothing more than a buyer-seller arrangement" and, as a result, "no reasonable trier of fact could find that a conspiracy existed." *Id.* at 9.

To be sure, "the mere purchase and sale of drugs does not, without more, amount to distribute narcotics." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015). But the Government presented evidence of far more than the purchase and sale of drugs as to Goudelock here, including direct contact with the broker regarding logistics and prices for tens of kilograms of cocaine. Each factor that courts consult to distinguish a buyer-seller relationship from an agreement to join a conspiracy— "prolonged cooperation between the parties, a level of mutual trust, standardized

6

dealings, sales on credit ('fronting'), and the quantity of drugs involved"—indicates support for the jury's conclusion that Goudelock was a member of the charged conspiracy. *See United States v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008) (internal quotation marks and citations omitted).

This evidence also supports the jury's conclusion that Goudelock was responsible for at least five kilograms of cocaine. First, testimony established that Goudelock was present when others unpackaged ten kilograms of cocaine after the October 3, 2017 trip to Cleveland. Second, Goudelock is responsible for drug amounts that are within the scope of the conspiracy that he joined and that were reasonably foreseeable to him. *See United States v. Jackson*, 335 F.3d 170, 180–83 (2d Cir. 2003); *United States v. Martinez*, 987 F.2d 920, 924–26 (2d Cir. 1993); *see also United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010). In other words, the Government need not have proven that Goudelock personally handled at least five kilograms of cocaine. Evidence existed, therefore, for the jury to attribute the seventeen kilograms of cocaine seized on July 25, 2018 to Goudelock. The evidence presented at trial was sufficient for the jury to conclude that, through his role in the conspiracy, Goudelock was responsible for the requisite quantity of cocaine.

The Court denies Goudelock's motion for a judgment of acquittal on Count 1.

### B.   Counts 2 and 3

Sufficient evidence also exists to sustain Goudelock's conviction on the attempted possession with intent to distribute charge in Count 2 and the possession with intent to distribute charge in Count 3.

7

The Government could prove Counts 2 and 3 one of three ways: (1) Goudelock himself attempted to possess (Count 2), or in fact possessed (Count 3), cocaine with intent to distribute; (2) Goudelock aided and abetted another to attempt to possess (Count 2), or to possess (Count 3), cocaine with intent to distribute; or (3) Goudelock is accountable for attempted possession (Count 2), or possession (Count 3), of cocaine with intent to distribute as a result of his participation in the conspiracy charged in Count 1—in other words, under a *Pinkerton*[6] theory. Any of these methods is sufficient for a rational jury to find Goudelock guilty on Count 2 and Count 3.

At a minimum, sufficient evidence exists from which the jury could have found Goudelock guilty of Counts 2 and 3 under a *Pinkerton* theory.[7] Because the jury found Goudelock guilty of Count 1, it could consider whether Goudelock was guilty of Counts 2 and 3 under *Pinkerton*. To prevail under this theory, the Government had to prove beyond a reasonable doubt that: (1) someone committed the crimes charged in Counts 2 and 3; (2) those who committed the crimes charged in Counts 2 and 3 were members of the conspiracy charged in Count 1; (3) those who committed the crimes charged in Counts 2 and 3 did so pursuant to the common plan and understanding found to exist between the conspirators; (4) Goudelock was a member of the conspiracy at the time Count 2 and Count 3 were committed; and (5) Goudelock could have reasonably foreseen that co-conspirators might commit Count 2 and Count 3. *See United States v.*

---

[6] *Pinkerton v. United States*, 328 U.S. 640 (1946).

[7] Because the jury need only have based its verdict as to Count 2 or Count 3 on one theory, the Court does not address the other theories.

8

*Bala*, 236 F.3d 87, 94–95 (2d Cir. 2000); *United States v. Molina*, 581 F.2d 56, 60–61 & n.7 (2d Cir. 1978).

The jury concluded that the conspiracy charged in Count 1 existed, and that Goudelock was a member of that conspiracy; as explained above, the Court has denied Goudelock's Rule 29 motion on that count.

Count 2 charged Goudelock and others with attempting to possess with intent to distribute five kilograms or more of a mixture and substance containing cocaine on October 19, 2017. *See* Dkt. 199. For the reasons discussed above in Section I.A, the Government presented sufficient evidence for the jury conclude that at least Valdez attempted to possess cocaine with the intent to distribute on October 19, 2017. That same evidence—specifically, Valdez's testimony about his call to Goudelock after completing the exchange—provided sufficient evidence for the jury to conclude that Valdez and Goudelock were members of the conspiracy on October 19, 2017, and that Valdez attempted to possess cocaine with the intent to distribute it on that date in furtherance of the common plan underlying the conspiracy. The phone call between Valdez and Goudelock also supports the conclusion that Valdez's attempted possession of cocaine on October 19, 2017 was reasonably foreseeable to Goudelock. In sum, sufficient evidence existed for the jury to find Goudelock guilty of Count 2, at least under a *Pinkerton* theory.[8]

---

[8] Because Valdez's attempted possession involved ten kilograms, sufficient evidence exists to sustain the jury's conclusion that Goudelock is responsible for at least five kilograms of a mixture or substance containing cocaine on Count 2.

9

Count 3 charged Goudelock and others—including Lance Parker—with possession with intent to distribute five kilograms or more of a mixture and substance containing cocaine on July 25, 2018. *See* Dkt. 199. For the reasons discussed above in Section I.A, the Government presented sufficient evidence for the jury to conclude that at least Parker possessed cocaine with intent to distribute on July 25, 2018. The jury heard that Parker was arrested with seventeen kilograms of cocaine on that date. Evidence that (1) Parker executed the exchange of currency for cocaine consistent with the instructions given by Pavia to Goudelock, (2) Goudelock was on the phone with Parker when law enforcement stopped Parker's vehicle, and (3) Goudelock called Pavia to tell him about Parker's arrest almost immediately, was sufficient for the jury to conclude that Parker and Goudelock were members of the conspiracy on July 25, 2018, and that Parker acted pursuant to the agreement to possess with intent to distribute, and to distribute, multiple kilograms of cocaine. Thus, the Government presented sufficient evidence for the jury to find Goudelock guilty of Count 3 under *Pinkerton*.[9]

The Court therefore denies Goudelock's Rule 29 motion as to Counts 2 and 3.

C. Count 4

Finally, sufficient evidence exists to sustain Goudelock's conviction on the money laundering conspiracy charge in Count 4.

To obtain a conviction on Count 4, the Government was required to prove that Goudelock "knowingly engaged in the conspiracy with the specific intent to commit the

---

[9] Because Parker's possession involved seventeen kilograms, sufficient evidence exists to sustain the jury's conclusion that Goudelock is responsible for at least five kilograms of a mixture or substance containing cocaine on Count 3.

...
...
...

offenses that [were] the objects of the conspiracy." *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (quoting *Huezo*, 546 F.3d at 180) (internal quotation marks omitted). The charged object of the conspiracy was:

> transaction money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), which prohibits certain financial transactions—including the transfer . . . of cash—involving the proceeds of certain unlawful activities when the defendant knows "that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."

*See id.* at 515–16 (quoting 18 U.S.C. § 1956(a)(1)(B)(i)); Dkt. 199. In other words, the Government had to prove: (1) two or more people agreed to commit transaction money laundering, in violation of Section 1956(a)(1)(B)(i); and (2) Goudelock knowingly engaged in the conspiracy with the specific intent to conduct a financial transaction with the goal of concealing the source of proceeds of cocaine trafficking.

Here, Valdez testified about his expected long-term role in Buffalo. He explained that Goudelock and Pavia planned to open a restaurant and a bar to launder money related to their drug-trafficking activities, and that he would oversee operations of those businesses. Valdez also testified about the October 3, 2017 dinner in Cleveland that he, Goudelock, Davis, and Pavia attended. He recounted that Goudelock and Pavia discussed buying trucks for a snowplowing business, which they would use to launder money and hide the proceeds of their drug-trafficking activities.

Valdez's testimony, alone, provides sufficient evidence from which the jury could conclude that an agreement existed between at least Pavia and Goudelock to engage in at least one transaction to conceal the origin of funds obtained from drug trafficking.

*See Castelin*, 597 F. App'x at 23 (cooperating witnesses' testimony provided sufficient evidence of defendant's knowledge of participation in illegal scheme).

Sufficient evidence therefore exists to sustain the jury's guilty verdict on Count 4, and the Court denies Goudelock's Rule 29 motion on that count.

## II. Motion for a New Trial

Goudelock also asks the Court to grant him a new trial because his pre-trial detention prevented him from reviewing the evidence and assisting with his defense at trial. *See* Dkt. 694, at 2–8. In particular, he argues that his pre-trial detention under these circumstances violated his Fourteenth Amendment due process rights and his Sixth Amendment right to counsel.

Federal Rule of Criminal Procedure 33 allows the Court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). The ultimate question when "deciding whether to grant a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Aguirre*, 853 F. App'x 748, 752 (2d Cir. 2021) (internal quotation marks and citation omitted).

Goudelock argues that that "the totality of circumstances" limited counsel's meaningful contact with him, violating his Sixth and Fourteenth Amendment rights and requiring a new trial. Dkt. 694, at 8. Four arguments comprise this totality of the circumstances underlying Goudelock's motion: (1) the effect of the protective order on trial preparation; (2) COVID-19 protocol at the Niagara County Jail, where he was

12

housed; (3) a policy of the Niagara County Jail to copy documents before sharing them with in-custody individuals; and (4) his counsel's choice not to move for his temporary release to prepare for trial.

As an initial matter, the Court notes that Goudelock did not raise most of these issues before or during trial, and did not request relief related to them. One exception is the Niagara County Jail policy of copying and retaining documents, which counsel raised at the October 4, 2021 final pretrial conference. *See* Dkt. 694, at 7–8. The Court invited counsel to submit an affidavit explaining the issue and the relief requested, and agreed to consider issuing an order addressing the issue. The Court also said it would contact the U.S. Marshal based on the information in any such affidavit. But the Court did not receive an affidavit. At an October 15, 2021 status conference, the Court asked about the issue, and counsel related that the issue was resolved, and she was able to share documents with her client directly, without jail officials copying them. No one raised the issue again. In particular, Goudelock did not claim that he was unable to prepare for trial as a result of the jail's policy—nor did he seek to adjourn the trial on that basis.

Beyond the concern about the jail's policy of copying documents in violation of the protective order, Goudelock did not object to the terms of the protective order— including the term that defendants may not review documents subject to the protective order outside their counsel's presence. In fact, the Government stated that it "consulted with each respective defense counsel . . . , who agree[d] and consent[ed] to the terms" of the order. Dkt. 364 ¶ 7. The Court signed the proposed order, and the order contained the agreed-to terms. *See* Dkt. 372.

13

In any event, Goudelock acknowledges that the protective order did not preclude his counsel from meeting with him and sharing documents to prepare for trial. *See* Dkt. 694, at 5 ("[T]he protective order . . . made the task of reviewing documents, testimony, and search warrant applications extremely difficult. Counsel was compelled to sit silently and permit her client to read pretrial discovery page by page."). The Court acknowledges the difficulties of preparing for trial with an in-custody defendant subject to COVID-19-related restrictions. But those difficulties here do not rise to the level of a constitutional violation that requires a new trial. *See United States v. Blanco*, 811 F. App'x 696, 702 (2d Cir. 2020) (rejecting Rule 33 argument based, in part, on trial counsel's failure to review certain discovery with defendant, noting that the court was "not aware of any authority requiring defense counsel to review with his client all of the discovery materials that counsel acquires in the course of preparing for trial"); *see also United States v. Fields*, No. 5:19-178-DCR, 2020 WL 3799227, at *3–*4 (E.D. Ky. July 7, 2020) (rejecting request for new trial based on defendant's claim that he "did not have a sufficient opportunity to review discovery material" with his counsel in light of COVID-19 protocol at detention center).

Nor did Goudelock seek temporary release based on these complications in his and counsel's trial preparation. His counsel acknowledges as much. *See* Dkt. 694, at 3. The Court cannot predict how it would have decided a motion it was not presented with, but notes that other courts rejected similar motions for temporary release. *See, e.g., United States v. Bryant*, 827 F. App'x 122, 125–26 (2d Cir. 2020) (district court did not abuse discretion in denying motion for temporary release because such release was

14

not necessary to prepare a defense); *United States v. Nero*, No. 17-cr-20183-5, 2020 WL 9264925, at *3 (E.D. Mich. Dec. 11, 2020) (denying motion for temporary release under 18 U.S.C. § 3142(i), where in-custody defendant argued "his trial preparation [was] . . . more 'inconvenient' as a result of pandemic-related restrictions," including complete suspension of in-person visits, but not that such restrictions "prevented [him] from effectively preparing a vigorous defense"); *United States v. Jimenez*, No. 20-CR-122-LTS, 2020 WL 1974220, at *3 (S.D.N.Y. Apr. 24, 2020) (rejecting argument for temporary release based on "challenges preparing [a] defense," including suspension of legal visits and a counselor's presence in the room with defendant during a call with counsel, and recognizing that "[w]hile the situation [was] not ideal," defendant did not meet the standard for release).

After considering all of Goudelock's arguments—separately and for their cumulative effect—the Court concludes that he was denied neither a fundamentally fair trial nor the assistance of counsel in violation of his constitutional rights. Goudelock does not claim that he was unable to meet or communicate with his counsel to prepare for trial. He did not ask to adjourn the trial, or seek release from custody to prepare for trial. And he does nothing to articulate how his trial preparation or trial strategy would have been at all different had the circumstances been different, aside from arguing that trial preparation would have been easier. Counsel acknowledges that she met with Goudelock to prepare for trial, including sharing discovery with him. Under these circumstances, Rule 33 does not require a new trial to rectify a "manifest injustice." The Court denies Goudelock's Rule 33 motion.

## CONCLUSION

For the reasons stated above, the Court denies Goudelock's motions for a judgment of acquittal and a new trial (Dkt. 694) in full.

SO ORDERED.

Dated:   December 15, 2022
         Buffalo, New York

                                                  _____
                                                  JOHN L. SINATRA, JR.
                                                  UNITED STATES DISTRICT JUDGE